Filed 7/5/24  P. v. Peacock CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B331833 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. A646845 |
| v. | |
| HENRY LAWRENCE PEACOCK, JR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hector E. Gutierrez, Judge.  Affirmed.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

Henry Lawrence Peacock, Jr., appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6.[1]  We affirm because the record of conviction establishes Peacock was the sole perpetrator and actual killer. He thus is ineligible for resentencing as a matter of law.

## FACTS AND PROCEDURAL BACKGROUND

### *The charges and jury verdicts*

In 1988 the People charged Peacock with the murder and attempted robbery of Luis (Ruben) Zepeda.  The People alleged Peacock personally used a firearm in the commission of the offenses, and that he murdered Zepeda while engaged in the commission of robbery.  Peacock was the sole defendant named in the information.

In July 1989 a jury convicted Peacock of the first degree murder and attempted robbery of Zepeda.  The jury found true the allegations that Peacock personally used a firearm and that he murdered Zepeda while engaged in the commission or attempted commission of robbery.  The trial court sentenced Peacock to life in the state prison without the possibility of parole, plus two years for the firearm enhancement.  The court stayed the sentence on the attempted robbery count. Another panel of this court affirmed Peacock's conviction. (*People v. Peacock* (Feb. 11, 1992, B045750) [nonpub. opn.].)

More than three decades later, on March 30, 2022, Peacock —representing himself—filed a form petition for resentencing under section 117[2.6].  Peacock checked boxes on the form

---

[1]     References to statutes are to the Penal Code.  Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)

2

stating (1) the information filed in his case "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime," (2) he was "convicted of **murder** . . . following a trial," and (3) "[he] could not presently be convicted of murder . . . because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."  Peacock also checked a fourth box that stated, "Having presented a facially sufficient petition, I request that this Court appoint counsel to represent me."

The trial court appointed counsel for Peacock.  The prosecution filed a response to Peacock's petition, contending Peacock was "not eligible for relief as a matter of law" because he was "the actual killer."  The prosecution stated, "The jury was instructed on first-degree felony murder, but the only theory presented to the jury was that Petitioner was the actual killer."  The prosecution noted Peacock's jury was not instructed on aiding and abetting.  The prosecution attached to its response the jury instructions and verdict forms from Peacock's 1989 trial.

Peacock filed a reply.  Peacock didn't deny being the actual killer.  Instead, he contended two of the jury instructions given at his trial–CALJIC Nos. 8.20 and 8.21—permitted the jury to convict him "based on an imputed malice theory."[2]  Peacock

---

[2]     The then-current version of CALJIC No. 8.21, entitled "First Degree Felony-Murder," provided,

> "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs [during the commission or attempted commission of

3

argued, "Consistent with the jury verdict, Petitioner could have been convicted under a then (but no longer) valid theory of causation whereby Defendant was not the actual killer but was rather the 'proximate cause' of decedent's death: there is nothing inherent in the jury's verdict and in the trial court's jury instructions that would rule out an accident or some other proximate causation of death which doesn't rise to the level of 'actual killer.' " Peacock also argued the jury's "true" finding on the allegation that he "personally used a firearm" in the commission of the murder and attempted robbery was "not a basis at the prima facie stage" to deny his petition.

The court held a hearing on June 27, 2023. The district attorney and Peacock appeared by Webex. Peacock's court-appointed counsel appeared in person. Peacock confirmed he could see and hear the court.

---

the crime] of robbery is murder of the first degree when the perpetrator had the specific intent to commit such crime. [¶] The specific intent to commit robbery and the commission or attempted commission of such crime must be proved beyond a reasonable doubt."

The current CALCRIM jury instruction on first degree felony murder contains similar language: the defendant must have intended to commit the underlying felony, such as robbery and, while committing or attempting to commit that underlying felony, the defendant personally committed an act "that directly caused the death of another person." A person "who was the actual killer" "may be guilty of felony murder even if the killing was unintentional, accidental, or negligent." (CALCRIM No. 540A.)

4

The court stated, "This matter is calendared for a prima facie determination as to Mr. Peacock's Penal Code section 1172.6 petition." The court asked "if either attorney would like to augment the record or add anything" to the papers they'd submitted. The prosecutor replied, "No. I'm going to submit on my pleadings, Your Honor."

Peacock's counsel said he'd had "the chance to do some more research" after he filed his brief. Counsel cited *People v. Langi* (2022) 73 Cal.App.5th 972 and *People v. Maldonado* (2023) 87 Cal.App.5th 1257. Those cases, counsel said, hold "if there's any now invalid legal theory under which the jury could have convicted" or "even confusing jury instructions which contradict each other," the court should find a prima facie case.

Counsel continued, "And that's what we have here. . . . [W]hat we have with the jury instructions given where the jury could have convicted [Peacock] without him being the actual killer based on imputed malice." As for the firearm enhancement, counsel argued the jury could have made that finding "if the discharge of the firearm was made without intent to kill but was simply an accident." Counsel then referred to "reckless indifference to human life" and a "major participant." Counsel stated, "[N]one of [the verdicts] actually have a finding that the defendant was the actual killer."

The prosecutor stated *Langi* "involved a second-degree murder and aiding and abetting instruction, so that would not be applicable here." The prosecutor continued, "[T]here are no aiding and abetting instructions [in] Peacock's case. It was all or nothing. He . . . was either the actual killer or he had to be found not guilty. And by virtue of them convi[ct]ing him, he was convicted as the actual killer."

5

The prosecutor added, "Then or now in a felony murder prosecution, he is not eligible for relief. He could currently be convicted of a felony murder as the actual killer without any further showing but the fact that he killed the victim. And once you establish that, there's really nothing further to look at at the prima facie stage."

In reply, Peacock's counsel reiterated that "it [apparently referring to the killing] could have been accidental or unintentional."

After both counsel submitted, the court said, "I began my review last week, and I was here for some time yesterday in the afternoon into the early evening reviewing the petition, the People's response, and the reply brief authored by [Peacock's counsel]." The court described the verdicts and listed the nine jury instructions that "were key in the court's analysis." The court cited *People v. Harden* (2022) 81 Cal.App.5th 45 (*Harden*) and discussed it at some length.

The court then stated,

>"The only theory the People proceeded on was that Peacock acted alone and was the actual killer. The jury returned a true finding on the personal use allegation. [¶] The natural and probable consequences doctrine was not read to the jury. No jury instructions were given as to aiding and abetting or even suggested that another perpetrator was involved. There was no instruction as to accomplice liability. [¶] The record of conviction in Mr. Peacock's case irrefutably establishes as a matter of law that the jury determined he was the actual killer,

and this court reaches this conclusion without any fact-finding, weighing of evidence, or credibility determinations and bases its decision only on the jury instructions, Penal Code section 189, and the relevant case law that I cited. [¶] For the foregoing reasons, the court is satisfied beyond a reasonable doubt that defendant Peacock was convicted as the actual killer under a valid theory of murder within the revised Penal Code section 189. The petition for relief is respectfully denied."

**DISCUSSION**

1. ***Governing law***

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) amended existing law on accomplice liability for murder " 'to ensure that murder liability is not imposed on a person who is not the actual killer . . . .' " (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417, quoting Stats. 2018, ch. 1015, § 1(f); § 189, subd. (e)(1).) To accomplish this goal, Senate Bill 1437 limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure a person's sentence is commensurate with his individual criminal culpability. (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).) Under the amended statute, a person may be convicted of felony murder only if (1) he was the actual killer; or (2) he was not the actual killer but, with the intent to kill, he aided and abetted the actual killer's commission of murder; or (3) he acted as a "major participant" in a felony

7

listed in section 189 and acted with "reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3; see *Gentile*, at p. 842.) Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, extended resentencing eligibility to individuals convicted of murder on any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (Stats. 2021, ch. 551, § 2(a).)

Senate Bill 1437 also provided an avenue for a person convicted under the former law to petition the sentencing court to vacate his conviction and be resentenced if he could no longer be convicted under the amended law. (*People v. Strong* (2022) 13 Cal.5th 698, 708–709 (*Strong*); *Lewis*, *supra*, 11 Cal.5th at pp. 959–960.) If the petitioner makes a prima facie showing of entitlement to relief, the trial court must issue an order to show cause and hold an evidentiary hearing. At the hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty under the amended law. (§ 1172.6, subds. (c), (d)(3); *Strong*, at pp. 708–709.)

At the prima facie stage, the trial court takes as true the petitioner's factual allegations and assesses whether the petitioner would be entitled to relief if those allegations were proved. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section 117[2.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Ibid*.) The jury instructions are part of the record of conviction, because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance

8

on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion,' " which may not take place until after an order to show cause issues. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted on other grounds Sept. 23, 2020, S263939, and held for *Lewis*, review dismissed Nov. 17, 2021, and opinion citable to the extent not inconsistent with *Lewis*; see *People v. Estrada* (2022) 77 Cal.App.5th 941, 949 [jury instructions showed trial court never instructed the jury on the natural and probable consequences doctrine; summary denial of petition affirmed].) The verdicts also are part of the record of conviction. (*Harden, supra,* 81 Cal.App.5th at pp. 47–48, 55–56 [affirming summary denial of petition; jury instructions and verdicts irrefutably established as a matter of law that defendant was ineligible for resentencing].)

We independently review the trial court's determination that Peacock failed to make a prima facie showing. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *Harden, supra,* 81 Cal.App.5th at p. 52.)

## 2. *Peacock is ineligible for resentencing as a matter of law*

Peacock asserts he established a prima facie case for relief. He says "scrutiny of the record of conviction does not inevitably lead to th[e] conclusion [that he was the actual killer as a matter of law] nor does any other information in the record establish ineligibility for relief." Peacock contends "whether appellant acted alone or not in the commission of his criminal conduct requires a finding of fact that is not permitted at the prima facie stage." Peacock then states: "[E]ven if the trial court did not err in concluding from the record of conviction that appellant acted

9

alone, it could not thereafter conclude as a matter of law that appellant was necessarily 'the actual killer' within the meaning of section 189, subdivision (e)(1)." Why is that? Because, Peacock says, he "might have caused the victim's death but lacked an intent to kill or a depraved heart," and "nothing in the record of conviction establishes that the jury could not have imputed malice" to him.

It is difficult to know what to make of these contentions. Peacock seems to be asserting, in the alternative, that either he wasn't the killer—someone else was—or he *was* the killer but it was an accidental or "unintentional" killing.

We previously granted the Attorney General's request for judicial notice of the reporters' transcripts of Peacock's trial. At the trial, Angel Valdiviez testified he and Zepeda drove to Los Angeles from Texas to visit family and their friend Arturo Ozaeta. Zepeda was driving a Chevrolet pickup truck. They picked up their friend from his workplace and drove to a supermarket to buy film. As Valdiviez opened the glove box to put the film in it, he heard someone say, " 'All of you step back away from the truck.' " Valdiviez looked up and saw a "gun toward[ ] [Zepeda's] head."

Valdiviez, Ozaeta, and Zepeda all stepped away from the truck. Zepeda had his hands up. "Right after that," Valdiviez heard a shot—"a pow"—and then two more shots. Zepeda said, " 'He shot me. He shot me.' " Valdiviez saw Zepeda had been shot in the side. Zepeda approached the shooter and they started to struggle. Valdiviez went to help Zepeda. Blood was "really squirting out" of Zepeda. Ozaeta ran to call 911. The shooter had a gun—a small revolver—in his right hand. The gun slipped out of his hand.

10

Valdiviez and Zepeda were beating up the shooter. Zepeda was bleeding from the side of his chest. Blood was going down his shirt. Zepeda stood up, gasping for air. Valdiviez tried to help Zepeda to the truck and they both fell into the truck. Valdiviez turned and the shooter was going down the street. Valdiviez and Ozaeta "held [the shooter] in the street until [a] security guard [from the store] put . . . handcuffs on him and brought him back to the scene," and put him in a police car.

At trial, Valdiviez identified Peacock as the shooter. He said he remembered the shooter's face: "It's in my dreams every night." Ozaeta also identified Peacock at trial.

Zepeda suffered a gunshot wound to the left chest. The bullet went through his left lung, then his aorta, then his right lung, and "came to lie" in his right chest wall. This "severe gunshot injury through the aorta and lungs" caused the victim to go into cardiac arrest.

Peacock testified on his own behalf at trial. He told the jury that, around noon that day, he was at a bus stop and ran into "a guy I know of named Snake." Peacock had "[s]een him around the neighborhood a lot of times" but didn't know his real name. Peacock had a gun in his back pocket "[f]or protection."

Both Peacock and Snake got on the bus, then later got off. They decided to " 'get a beer.' " Peacock went into a store to buy beer. He "told [Snake] to hold my gun."

Peacock came out of the store about five or ten minutes later. He didn't see Snake. He saw people by a truck and heard "some screaming and some saying 'help.' " Peacock "walked over there to see what was going on." He saw "a guy laying [*sic*] in the back of the truck bleeding."

11

Peacock crawled into the truck to help the man. Peacock "didn't really feel a heartbeat" so he "started pumping his heart several times." Peacock was doing C.P.R. Peacock then got out of the truck to ask for help and "they jumped on me."

At the court's jury instruction conference with counsel, the court noted Peacock's defense was "an alibi." "[F]or that reason," the court continued, there was "no issue as to whether or not he's an aider and abettor. He either is the perpetrator or he's not, correct?" Peacock's counsel replied, "Correct. I don't think there should be anything about an aider and abettor."

The prosecutor did not mention aiding and abetting or any other accomplice liability theory in his closing argument. The prosecutor said the case was "a whodunit." Nor did Peacock's counsel tell the jury that Peacock was merely an accomplice. Instead, he argued the prosecution witnesses were "mistaken" about who the shooter was.

Peacock contends "this court should not consider the reporter's transcripts from appellant's original trial" because "[a] court may not take judicial notice of irrelevant matters." But the transcripts of Peacock's trial are not "irrelevant." They are part of the record of conviction.[3]

---

[3] In his request for judicial notice of the trial transcripts, the Attorney General states, "The transcripts of the trial are relevant to this appeal because the superior court relied upon those transcripts at the hearing on appellant's petition for resentencing." The Attorney General appears to be mistaken. Nothing in the record indicates the district attorney submitted the trial transcripts; he filed copies of the jury instructions and the verdict forms only. At the hearing on the petition, Peacock's counsel asked the court to "put on the record what it's relying on . . . in the prima facie case." The court stated it had "read and

12

Moreover, even without the trial transcripts, we would affirm the denial of Peacock's petition. No other defendant or alleged perpetrator is mentioned in the information or anywhere else in the record. The jury instructions establish Peacock's jury was not instructed on the natural and probable consequences doctrine or any other theory imposing liability on him as an accomplice to a murder by Snake or anyone else. (See *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1198, 1201 ["jury instructions contained no reference to an accomplice"; denial of petition at prima facie stage affirmed]. Cf. *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1232, 1247 (*Beaudreaux*) [same; record of conviction—instructions, verdicts, and jury's findings—"refute conclusively [defendant's] attempt to allege entitlement to section 1172.6 relief"]; *People v. Mares* (2024) 99 Cal.App.5th 1158, 1161, 1167–1169 (*Mares*) [appellate court "need not credit the truth of any fact in the preliminary hearing transcript" to affirm denial of petition at prima facie stage; "record supports no theory other than those where [defendant] was the actual killer"], review granted May 1, 2024, S284232.) The verdict forms demonstrate the jury convicted Peacock of first degree murder under the felony-murder rule and found true the allegation that, in the commission of the offenses, Peacock personally used a firearm.[4]

considered" Peacock's petition, the People's response, and Peacock's reply. The court detailed the verdict forms and the jury instructions attached as exhibits to the prosecution's response, listing the CALJIC number and Bates stamp number of each.

[4] See *Beaudreaux, supra,* 100 Cal.App.5th at pp. 1244–1246 [distinguishing *People v. Offley* (2020) 48 Cal.App.5th 588 because, in that case—unlike in *Beaudreaux*—the jury was instructed on natural and probable consequences].

13

As the sole and actual perpetrator of Zepeda's murder, Peacock is ineligible for resentencing as a matter of law. (*People v. Garcia* (2022) 82 Cal.App.5th 956, 969–973 (*Garcia*) [affirming denial of resentencing because record of conviction "unequivocally establishes" defendant was the sole perpetrator and actual killer]; *Harden, supra*, 81 Cal.App.5th at pp. 47–48, 56 [same]; *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1104–1105, 1110–1111, 1128 [affirming denial of petition at prima facie stage; defendant was shooter; jury convicted defendant of first degree murder with personal use of firearm enhancement and felony-murder special circumstance]; *People v. Hurtado* (2023) 89 Cal.App.5th 887, 889, 893 [no need for a hearing because "the defendant was the only person who committed the crime"]; *People v. Garrison* (2021) 73 Cal.App.5th 735, 743–744; *People v. Gallo* (2020) 57 Cal.App.5th 594, 599–600; *People v. Edwards* (2020) 48 Cal.App.5th 666, 669, 674 [affirming summary denial of resentencing petition where record of conviction showed defendant was actual killer]; see also *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 (*Delgadillo*) [defendant "not entitled to any relief under section 1172.6" because he "was the actual killer and the only participant in the killing"]; *Beaudreaux, supra,* 100 Cal.App.5th at p. 1239 [defendant bound by jury's findings that he personally and intentionally fired a weapon in the course of an attempted robbery that caused the victim's death].)

Finally, Peacock contends "the record of conviction does not exclude the possibility that [he] only proximately caused the victim's death." This contention borders on the unintelligible.

Peacock's defense at trial was not that he "only proximately caused" Zepeda's death. His defense was that Snake did it, and he was inside the store at the time. (Cf. *Beaudreaux, supra,*

100 Cal.App.5th at p. 1241 [defendant's denial of responsibility for victim's death "put in issue his role in [victim's] killing, and he had the incentive and opportunity at trial to claim that he did not personally shoot [victim]"].)

Peacock relies on *People v. Lopez* (2022) 78 Cal.App.5th 1 and *People v. Vang* (2022) 82 Cal.App.5th 64. Our colleagues in the Third District summarized those cases in *Garcia, supra,* 82 Cal.App.5th at p. 971:

> "In *Lopez*, the victim was bludgeoned to death during a home-invasion robbery involving two perpetrators, but there was no direct evidence that the defendant was the person who bludgeoned the victim. (*Lopez*, at pp. 5–10, 19.) Similarly, in *Vang*, there was no direct evidence that the defendant personally committed the act that killed his wife. There, the defendant, who had a long history of domestic violence, got into an argument with his wife and followed her after she fled in a car. (*Vang*, at pp. 69–70.) He eventually forced her to stop and coerced her into his vehicle through force or fear. (*Id*. at p. 69.) As he was driving away, she opened the door and jumped out of the vehicle; the fall from the vehicle resulted in her death. (*Ibid*.)"

Here, again, Peacock never contended at trial that he somehow acted as Snake's accomplice—one of two perpetrators as in *Lopez*. Instead, Peacock testified under oath that he wasn't even there, plainly implying Snake must've been the shooter—using Peacock's gun—while Peacock was in the store.

Moreover, as we have explained, a person "who was the actual killer" "may be guilty of felony murder even if the killing was unintentional, accidental, or negligent." (CALCRIM No. 540A. See *Beaudreaux, supra*, 100 Cal.App.5th at pp. 1243–1244 ["even assuming hypothetically [defendant] could produce evidence of [an] accidental discharge" of the firearm, it wouldn't matter; "[w]e still have the long-standing rule that a defendant is guilty of felony murder if, while intending to commit a qualifying felony, he personally performs an act that causes death, regardless of whether the fatal act was intentional or accidental"].)

In sum, the record of conviction conclusively establishes Peacock was the sole perpetrator and actual killer. "As the Supreme Court has repeatedly made clear, the structure of section 1172.6 shows the Legislature intended for the trial courts to winnow petitions, rejecting those without any merit at the prima facie hearing based on information contained in the record of conviction." (*Mares, supra,* 99 Cal.App.5th at p. 1173, citing *Lewis, supra*, 11 Cal.5th at p. 971, *Delgadillo, supra*, 14 Cal.5th at p. 233, *Strong, supra*, 13 Cal.5th at p. 700; *People v. Curiel* (2023) 15 Cal.5th 433, 464.)

**DISPOSITION**

We affirm the order denying Henry Lawrence Peacock, Jr.'s, petition for resentencing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.